UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

UNITED STATES OF AMERICA, *ex rel.*,
GREGORY LYNN and PAULETTE HAMILTON,

    Plaintiffs,

v.                                                                                          Case No. 17-14168

CITY OF DETROIT,

    Defendant.
_____/

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiffs-Relators Gregory Lynn and Paulette Hamilton filed this *qui tam* action on behalf of the United States of America against Defendant City of Detroit. (ECF No. 1.) Their complaint alleges that Defendant awarded municipal contracts for transportation services to a favored bidder, violating the False Claims Act ("FCA") and Federal Transit Authority ("FTA") procurement policies. (*Id.*, PageID.13-16.)

The case was sealed while the federal government considered whether to intervene to represent its own interests. On November 12, 2020, the government notified the court that it would not intervene in the case. (ECF No. 27.) At the time the government declined intervention, Plaintiffs were not represented by counsel, but an attorney subsequently entered an appearance on behalf of Plaintiffs on March 25, 2021. (ECF No. 37.)

Before the court is Plaintiffs' "Motion to Amend/Correct Qui Tam Complaint." (ECF No. 44.) Plaintiffs' proposed complaint alleges a significant number of additional

factual allegations, but it does not add any new substantive causes of action against Defendant; the nature of the complaint—an FCA action—effectively remains the same. Defendant opposes amendment of the complaint. In its response, Defendant maintains that the amended complaint is "essentially . . . an entirely new lawsuit" which must be filed in accordance with the particular procedures set forth in the FCA and that Plaintiffs' dilatory action militates against allowing the amendment. (ECF No. 45, PageID.470, 494.) Plaintiff filed a reply. (ECF No. 47.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. L.R. 7.1(f)(2). In the interest of judicial economy, and for the reasons set forth below, the court will grant Plaintiffs' motion in part.

## I. BACKGROUND

On December 27, 2017, Plaintiffs filed their *qui tam* complaint against Defendant. The crux of the action is that the Defendant—through the Detroit Department of Transportation ("DDOT"), which receives federal funds for municipal transportation programs—has violated federal policies and regulations through its improper contractual relationships and made false and fraudulent assurances and certifications regarding such declarations.

In its original complaint, Plaintiffs illustrated Defendant's purportedly problematic conduct by pointing to two requests for proposals ("RFP"), RFP #50439 and RFP #16PC533, and the resulting contracts. DDOT provides paratransit services to qualifying individuals with disabilities. (ECF No. 1, PageID.7.) These passengers may contact DDOT and request transportation to their desired destination. (*Id.*) On April 16, 2015, Defendant issued RFP #50439, in search of a contractor that could provide

paratransit services for Defendant, manage a call center for incoming pick-up requests, and more. (*Id.*) According to Plaintiffs, who own and operate a company that for years provided transportation services for Defendant, this contract was improperly awarded to a competing contractor named Transdev Services ("Transdev"). Specifically, Plaintiffs point to the friendship and business relationship between the director of the DDOT, Dan Dirks, and the general manager of Transdev, Martin Moore. (*Id.*, PageID.7-11.) Plaintiffs explain that although other contractors provided better offers to Defendant, Transdev was chosen over the other contractors; this behavior continued into August 2016 with RFP #16PC533 and its resulting contracts. (*Id.*) As time went on, according to Plaintiff, Transdev and Defendant were engaged in a "pattern of exploiting an unfair advantage," and Defendant and DDOT awarded additional contracts to Transdev even though it appeared economically irrational to do so. (*Id.*, PageID.11-13.) Notably, Plaintiffs alleged that Dirks was on the "evaluation team" for these contracts and was able to "steer[] the contract[s] to the employer of his friend—who was not the lowest bidder." (*Id.*, PageID.7-12.)

This improper contractual relationship, according to Plaintiffs, runs afoul various federal regulations requiring competitive bidding in the use of federal funds, federal policies that foster impartiality and competitiveness, and other federal rules. Thus, the heart of Plaintiffs' complaint is that because Defendant, in order to receive federal funds, must make a number of assurances or certifications that it is in compliance with federal law, and because Defendant has made these false certifications, Defendant has violated the FCA. (*Id.*, PageID.13.) In their original complaint, they allege:

> The Government, unaware of the falsity of Defendant's assurances;
> Defendant's violation of the FTA procurement policies and procurement

3

> systems; and Defendant's overall misconduct in the awarding of multiple contracts—two of which are undisputedly federally funded, awarded and continues to award FTA and/or other federal funding to Defendant for these contracts.

(*Id.*, PageID.15.) The core of the action is that the alleged cronyism between Dirks and Moore has led to Defendant improperly granting federally funded contracts to Transdev, and therefore, "the United States has been damaged, and continues to be damaged" by Defendant's conduct. (*Id.*)

Plaintiffs' proposed complaint further advances their theme by detailing additional instances in which Transdev or its wholly owned subsidiary, Intelliride, were favored by Defendant in the course of federally funded contracts. For example, Plaintiffs allege that additional August 2018 RFPs, such as RFP #18PC2188 and RFP #18PC2198, were also carried out improperly. (ECF No. 44-6, PageID.414-23.) According to Plaintiffs, these RFPs led to Defendant granting contracts to either Transdev or Intelliride; they theorize this occurred as a result of an uncompetitive bidding process and despite Transdev's entities being unqualified or having performed poorly on previous contracts. (*Id.*) Several other contracts involving Transdev or Intelliride were allegedly unlawfully granted or monitored by Defendant. (*Id.*, PageID.423-448, 455-56.)

## II. STANDARD

Federal Rule of Civil Procedure 15(a)(1) allows a party to amend a pleading within twenty-one days of serving the pleading or, if a responsive pleading is required, within twenty-one days of the responsive pleading. Once twenty-one days have passed, a party may amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). And under Rule 15(d), courts may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event

4

that happened after the date of the pleading to be supplemented." Consistent with the liberal pleading standards of federal court, Rule 15 directs the court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a); *see* 6 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1473 (3d ed.). Underlying the rule is the principle that "cases should be tried on their merits rather than the technicalities of pleadings." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986).

"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis,* 371 U.S. 178, 182 (1962). This standard applies to both proposed amended and supplemental pleadings. *See Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002); *Bromley v. Mich. Educ. Ass'n-NEA*, 178 F.R.D. 148, 154 (E.D. Mich. 1998).

### III. DISCUSSION

Defendant opposes Plaintiffs' motion on two grounds. First, Defendant argues Plaintiffs "have been dilatory in seeking to raise their new allegations," and allowing the proposed changes at this stage could cause further delays or complexities in this case. (ECF No. 45, PageID.494-95.) Second, Defendant claims Plaintiffs' proposed amendments "essentially state an entirely new lawsuit, which should be filed as a new complaint according to the procedures set forth in the [FCA]." (*Id.*, PageID.489.)

5

## A. Rule 15

Plaintiffs styled the present motion as a motion to amend its *qui tam* complaint and grounded its request on Federal Rule of Civil Procedure 15(a).[1] (ECF No. 44.) But to the extent Plaintiffs seek to add factual allegations that arose after the filing of their complaint, Rule 15(d)—which governs supplemental complaints setting forth any "transaction, occurrence, or event that happened after the date of the [original] pleading"—is the governing rule. Thus, "[b]ecause Plaintiff's motion seeks to add allegations concerning events that occurred after the complaint was filed," as well as facts that occurred before, "the motion should have been bought pursuant to both Rule 15(d) and Rule 15(a)." *Weiner v. Weiner*, No. 1:06-CV-642, 2008 WL 746960, at *13 (W.D. Mich. Mar. 18, 2008). Yet, Defendant opposes the motion based on Plaintiffs' alleged dilatory action, and on these grounds the two subsections present "a distinction without a difference, as the standard for granting leave to supplement under Rule 15(d) is identical to the standard governing leave to amend under Rule 15(a)." *Murphy v. Grenier*, No. 07-CV-15248-DT, 2009 WL 1044832, at *19 (E.D. Mich. Apr. 20, 2009) (Friedman, J.), *aff'd*, 406 F. App'x 972 (6th Cir. 2011). And whether under Rule 15(a) or Rule 15(d), significant discretion is conferred to district courts in their decision to grant or deny such motions. *See Bormuth v. Whitmer*, --- F. Supp. 3d ----, 2021 WL 2910524, at *3-4 (E.D. Mich. 2021) (Patti, Mag. J.) (citing *Spies*, 48 F. App'x at 527).

The court will construe Plaintiffs' motion as both a motion to amend its complaint to add factual allegations which occurred before the filing of the complaint as well as a

---

[1] Although not argued in its motion, Plaintiffs' reply cites Rule 15(d) and maintains that the proposed complaint is "a legitimate combination of an amended and a supplemental complaint." (ECF No. 47, PageID.731.)

6

motion to supplement its complaint with events that occurred after. *See Weiner*, 2008 WL 746970, at *14 (characterizing proposed complaint as a "proposed supplemented and amended complaint"); *Robbins v. Payne*, No. 11-15140, 2012 WL 4812495, at *2-3 (E.D. Mich. Oct. 10, 2012) (Whalen, Mag. J.) (permitting a plaintiff to both amend and supplement its complaint where it sought "to add claims related to events both before and after" the filing of the original complaint); *see also* 6 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1504 (noting that generally "the formal distinction between amendment and supplementation is of no consequence").

      Defendant notes that "the usual factors considered in a typical motion to amend a pleading are for the most part irrelevant here," but sets forth a brief argument that Plaintiffs were "dilatory in seeking to raise their new allegations." (ECF No. 45, PageID.494.) The court agrees to the extent that the traditional factors to consider under Rule 15—such as undue delay, bad faith, repeated failure to cure deficiencies, and undue prejudice—are largely inapplicable. No evidence has been presented to support such findings. The court, however, disagrees with Defendant's assessment that Plaintiffs have been dilatory. On June 2, 2021, the court entered a scheduling order which outlined the course of discovery. (ECF No. 43.) Only three months later, and still two months before the discovery deadline, Plaintiffs filed this motion, seeking to further illustrate their factual allegations and theme of the case. Nothing in the record indicates that Plaintiffs did not act diligently to uncover and allege additional facts. Although Defendant points to the time passed from the original complaint, Plaintiffs utilized at least some of this time to find new counsel or apprise the government of the facts it possessed. (ECF No, 47-2, PageID.742-745.) In addition, at the time the instant motion

was filed, the case was still in its early stages; despite the action being filed in December 2017, the government did not decline to intervene until November 2020, and the parties did not present their joint 26(f) discovery plan until May 2021. (ECF No. 42.)

Furthermore, Defendant's suggestion that any new allegations should be filed as a new complaint must be rejected. Plaintiffs' proposed complaint "would 'avoid piecemeal litigation between essentially the same parties on substantially identical issues.'" *Bormuth*, 2021 WL 2910524, at *6. Even where a proposed complaint adds a party, concerns different legal authority, relates to a different time period, and adds new causes of action, judicial efficiency can be furthered by allowing a supplemental complaint where "the crux" of a lawsuit remains the same. *See id.* Here, granting Plaintiffs' motion would promote judicial economy because while there are new factual allegations, the nature of the action and underlying conduct at issue remains the same. *See Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982) ("The amended cause of action is not so different as to cause prejudice to the defendants, nor do we find the delay particularly 'undue' considering the course of this case through a prior appeal to this Court."). "When a dispute is complicated and protracted, and a new complaint the likely alternative, allowing supplemental pleadings before a court [is] already up to speed is often the most efficient course." *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 625 (6th Cir. 2016); *accord Chesapeake & Ohio Ry. Co. v. U.S. Steel Corp.*, 878 F.2d 686, 690-91 (3d Cir. 1989) (citing 6 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1508) ("Where, as here, the original pleading placed the defendant on notice that the disputed conduct was of a continuing nature, the defendant is generally expected to defend against all claims arising out of that course of conduct—

8

whether accruing before or after the original pleading was filed."). As stated by Plaintiffs, an amendment or supplement "is no more burdensome than Defendant City's proposed new case and new complaint." (ECF No. 47, PageID.736.)

In accordance with Rule 15's principle that amendment of pleadings should be freely given, and finding that this particular proposed complaint would not unduly prejudice Defendant or inappropriately delay the litigation, the court will permit Plaintiffs to amend and supplement their complaint. As explained below, however, the court will strike a particular section of the proposed complaint regarding allegations of discrimination.

### B. FCA Procedures

Defendant opposition to Plaintiffs' motion rests primarily on its contention that Plaintiffs failed to follow the proper FCA procedures. The FCA permits a private individual, known as a relator, to bring a civil *qui tam* action on behalf of the United States against a party who presents a false or fraudulent claim for payment to the federal government. *See* 31 U.S.C. § 3730(b); *State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 137 S. Ct. 436, 440 (2016). A relator must follow particular statutory procedures, including serving the government with "[a] copy of the complaint and written disclosure of substantially all material evidence and information the person possesses." 31 U.S.C. § 3730(b)(2). As relevant here, the FCA provides that the complaint "shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders." *Id.* Before the expiration of this 60-day period, the government must either "proceed with the action, in which case the action shall be conducted by the government," or "notify the court that it

9

declines to take over the action, in which case the person bringing the action shall have the right to conduct the action." 31 U.S.C. § 3730(b)(4).

Defendant argues that Plaintiffs are "attempting to bypass these required procedures." (ECF No. 45, PageID.490.) While Defendant concedes that a relator may make changes to a *qui tam* complaint, it vehemently points to the fact that the proposed complaint features allegations revolving around several new contracts, an additional three-year time period, and significantly more factual allegations as a whole. (*Id.*, PageID.491.) Defendant maintains that this is "basically a new complaint," and Plaintiffs consequently "should be required to assert their new allegations by filing a separate complaint filed under seal, and permit the federal government to fully investigate the allegations and conduct whatever investigation it deems appropriate." (*Id.*)

"The majority of district courts [have] held that the FCA's mandatory filing requirement [does] not apply to amended complaints, especially where . . . an amended complaint makes similar allegations of fraud and the government has already been afforded an opportunity to consider whether to intervene." *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, No. 5:15-CV-1608, 2017 WL 4102371, at *8 (N.D. Ohio Sept. 15, 2017), *aff'd*, 739 F. App'x 330 (6th Cir. 2018); *accord United States ex rel. Kolchinsky v. Moody's Corp.*, 162 F. Supp. 3d 186, 198 (S.D.N.Y. 2016) (collecting cases); *United States ex rel. Griffith v. Conn*, No. 11-157-ART, 2013 WL 3935074, at *2-3 (E.D. Ky. July 30, 2013). Where a complaint makes "new and substantially different" allegations of fraud, a relator may be required to re-

seal the amended complaint.[2] *See Kolchinsky*, 162 F. Supp. 3d at 198; *United States ex rel. Davis v. Prince*, 766 F. Supp. 2d 679, 683 (E.D. Va. 2011); *see also United States ex rel. Adams v. Remain at Home Senior Care, LLC*, No. 1:17-CV-01493, 2021 WL 4398584, at *13 (D.S.C. Sept. 27, 2021). This rule stems from the purposes of the sealing requirement, which are to "allow the government first to ascertain in private whether it was already investigating the claims stated in the suit and then to consider whether it wished to intervene" and to "prevent alleged wrongdoers from being tipped off that they were under investigation." *United States ex rel. Ubl v. IIF Data Solutions*, No. 1:06-cv-641, 2009 WL 1254704, at *4 (E.D. Va. May 5, 2009) (quoting *Erickson ex rel. United States v. Am. Inst. of Biological Scis.*, 716 F. Supp. 908, 912 (E.D. Va. 1989)). Accordingly, the policy arguments supporting denial of an amendment to a complaint do not carry weight where the government is "already on notice of the claims at issue." *See Adams*, 2021 WL 4398584, at *13; *accord Ubl*, 2009 WL 1254704, at *4.

Here, the court finds Defendant's arguments largely unpersuasive and will not require Plaintiffs to refile a new complaint under seal. Plaintiffs' original complaint brings

---

[2] Courts begin to diverge as to whether, based on the plain language of the statute, a party *ever* needs to file an amended complaint under seal. *Compare Griffith*, 2013 WL 3935074, at *2 (explaining that "the omission of 'amended complaint' appears intentional" and that "interpreting the Act to apply to only complaints, and not amended complaints, is consistent with the Act's purpose"), *with Davis*, 766 F. Supp. 2d at 684 n.11 ("To argue that the omission of the word 'amended' in § 3730(b)(2) means that the provision excludes amended complaints is no more persuasive than an argument that omission of the word 'original' excludes original complaints."). Many courts have noted that *only* the original complaint must be filed under seal. *See United States ex rel. Milam v. Regents of Univ. of Cal.*, 912 F. Supp. 868, 890 (D. Md. 1995) ("Neither the statute nor any relevant case law imposed upon her the duty to file any amendments to that complaint in camera and under seal."); *Sears v. Livingston Mgmt. Inc.*, No. 09-45-SDD-RLB, 2013 WL 3730094, at *6 (M.D. La. July 11, 2013) (collecting cases).

11

one count under the FCA based on Defendant's improper, impartial relationship with a contractor, Transdev Services. The government, therefore, was on notice that the nature or thrust of the action pertained to the relationship between Defendant and Transdev and that this could encompass more than just the few contracts noted in the original complaint—Defendant's concern that the government must be given time to "fully investigate the allegations and conduct whatever investigation it deems appropriate" is misplaced.[3] (ECF No. 45, PageID.491.) Even if Defendant's newly alleged conduct violated a different federal regulation, the proposed complaint still features only one count for a violation of the FCA, and it is clear from Plaintiffs' complaint that any new factual allegations have snowballed directly from the nucleus of the case: Transdev was improperly favored as Defendant's contractor. In other words, Plaintiffs' proposed complaint implies a domino effect—but for the initial favored treatment, each of the resulting contracts over the course of the next four years would not have occurred. And Plaintiffs' original complaint alludes to this, stating that "[i]n awarding this second contract in less than a year to Transdev, Defendant *continues the pattern of exploiting an unfair competitive advantage*." (ECF No. 1, PageID.13

---

[3] Additionally, Defendant's concern should be alleviated because even "where the government does not intervene, there are number of control mechanisms in the qui tam provisions of the FCA so that the [Government] nonetheless retains a significant amount of control over the litigation." *United States ex rel. Gilbert v. Va. Coll., LLC*, 305 F. Supp. 3d 1315, 1324 (N.D. Ala. 2018) (quoting *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753 (5th Cir. 2001)). The FCA, for example, makes clear that the government will still receive all pleadings and depositions transcripts and has the right to approve or reject a stipulated dismissal. *See United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 845 (6th Cir. 2020). And the statute's language makes clear that even if the government chooses not to intervene initially, the court, upon a showing of good cause, "may nevertheless permit the Government to intervene at a later date." *See* 31 U.S.C. § 3730(c)(3); *Holloway*, 960 F.3d at 845.

(emphasis added).) Plaintiffs made clear that the government "continues to be damaged" through its awards of federal funds to Defendant. (*Id.*, PageID.15.) The government had an opportunity to evaluate and consider these allegations and would have known that an improper relationship could lead to additional, unlawful conduct between the entities. Moreover, Defendant and all other implicated parties were "tipped off" when the case was unsealed following the government's decision to not intervene in the case. (ECF No. 28.) The proposed complaint does not add any defendants or bring other causes of action; rather, it preserves its theory that Defendant's relationship with Transdev Services continue to violate the FCA.

Defendant emphasizes that the proposed complaint is five times as long as the original and that there are now dozens of exhibits. (ECF No. 45, PageID.491.) However, the number of allegations is immaterial where they all share the same focus of Defendant's contractual relationships with Transdev violating various federal regulations and running afoul of the FCA. That Plaintiffs, since the action was filed, have discovered additional contracts that were allegedly in violation of other federal regulations does not prohibit them from supplementing their complaint with similar allegations. Thus, while many of the allegations are new and involve a wholly-owned subsidiary of Transdev, they are certainly not substantially different from the nature of those already made in the original complaint, especially where they involve the same problematic relationships. *See, e.g., Adams*, 2021 WL 4398584, at *13 (holding that the "crux" of relators' allegations have not substantially changed even though they "significantly expound[ed]" on the behavior of the implicated parties and their scheme to receive kickbacks in violation of the FCA); *cf. Virginia ex rel. Hunter Labs., LLC v. Quest Diagnostics, Inc.*,

13

No. 1:13-CV-1129, 2014 WL 1928211, at *5 (E.D. Va. May 13, 2014) (finding, under Virginia statute with similar filing requirements, that where an amended complaint is based on "the same underlying conduct," requiring relators to seal an amended complaint "would provide no additional benefit . . . and would needlessly delay [the] litigation").

### C. Discrimination Allegations

The court, however, agrees with Defendant in one respect. Plaintiffs' factual allegations pertaining to the "failure or refusal to investigate discrimination complaints" are wholly unrelated to and outside the scope of this litigation. (ECF No. 44-8, PageID.449-54.) While all other allegations pertain to unfair competition in the contract bidding process or bias in monitoring Transdev's performance, the discrimination allegations center more so on the relationship between Transdev and third parties, as opposed to the true focus of the case, which is the relationship between Transdev and Defendant.

Therefore, the court finds these allegations would not be a proper amendment. At least some of the facts alleged were known to Plaintiffs before the filing of the original complaint or shortly after it, evincing Plaintiffs' dilatory action; this can be contrasted with the other new allegations, most of which were apparently discovered only after Plaintiffs retained new counsel in March 2021. (ECF No. 44, PageID.355-56.) Moreover, as it relates to compliance with FCA's required procedures, the discrimination allegations constitute "new and substantially different" facts and could stand on their own as a separate, distinct lawsuit. The core of the present action is Transdev's contracts with Defendant. The discrimination allegations do not relate to that theme. As

14

such, the court will not permit Plaintiffs to pursue their FCA claim on the basis of the factual allegations found under the heading "Failure or Refusal to Investigate Discrimination Complaints" in Part IV of its proposed complaint. (ECF No. 44-8, PageID.449-54.)

### IV. CONCLUSION

Rule 15 instructs courts to "freely give leave [to amend] when justice so requires." For the foregoing reasons, the court will grant Plaintiffs' motion in part. Accordingly,

IT IS ORDERED that Plaintiffs' "Motion to Amend/Correct Qui Tam Complaint" (ECF No. 44) is GRANTED IN PART. Specifically, it is GRANTED except for the factual allegations pertaining to "Failure or Refusal to Investigate Discrimination Complaints." (ECF No. 44-8, PageID.449-54.)

                               s/Robert H. Cleland
                               ROBERT H. CLELAND
                               UNITED STATES DISTRICT JUDGE

Dated:  January 18, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 18, 2022, by electronic and/or ordinary mail.

                               s/Lisa G. Wagner
                               Case Manager and Deputy Clerk
                               (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\17-14168.LYNN.MotionToAmendComplaint.MAZ.docx