UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA, ex rel.
GREGORY LYNN and PAULETTE
HAMILTON,

      Relators/Plaintiffs,

v.                                Case No. 17-14168

CITY OF DETROIT,                 Sean F. Cox
                                  United States District Court Judge

      Defendant.

_____/

## OPINION & ORDER
## GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFFS' SUMMARY JUDGMENT MOTION

This civil action was filed in 2017, when a Sealed Qui Tam Complaint was filed by Relators Gregory Lynn and Paulette Hamilton, on behalf of the United States of America, against Defendant City of Detroit. The United States declined to intervene and the Plaintiff Relators are proceeding on their own. The matter is currently before the Court on the City of Detroit's summary judgment Motion and Plaintiffs' motion seeking partial summary judgment. The parties have briefed the issues, including filing supplemental briefs as ordered by this Court. The Court concludes that oral argument is not necessary and shall rule on the briefs. Local Rule 7.1. The Court GRANTS the City's summary judgment motion, DENIES Plaintiffs' motion, and DISMISSES this action.

As the third judge assigned to this 2017 case – and faced with summary judgment motions after not having presided over this case during the past seven years – this Court's first task was to ascertain the claim asserted in this case. That task was complicated by the fact that

1

Plaintiffs have been represented by three different law firms during the course of this case and they have sought numerous amendments of their complaint. This Court concludes that Plaintiffs' operative complaint, their Second Amended Complaint, does not assert claims for violations of 31 U.S.C. § 3729(a)(2), false document claims under § 3729 (a)(1)(B), or implied false certification claims.

Rather, Plaintiffs' Second Amended Complaint asserts express false certification claims that are based upon the City's annual "certifications and assurances." The City has established that it is entitled to summary judgment in its favor as to those claims. That is because the certifications and assurances at issue relate to future compliance with federal laws and regulations, not past or present compliance. It is well established that, to support a fraud claim, the misrepresentation at issue must be related to a past or existing fact, because future promises are contractual and do not constitute fraud. As such, courts addressing "false certification" claims under the False Claims Act have held that representations about *future performance*, such as annual assurances of compliance, are insufficient to establish a claim.

And while the Plaintiff Relators have not raised or discussed it, some courts have allowed a false express certification to proceed under a "promissory fraud" exception – so long as the plaintiff can establish that the defendant had no intention of complying in the future at the time the certification was made. But the Sixth Circuit has not recognized that exception in the False Claims Act context and, even if it had, it would not aid Plaintiffs here as: 1) their operative complaint does not allege that the various individuals who signed the certifications and assurances at issue had no intention to comply with the federal laws and regulations at the time they signed them; and 2) Plaintiffs have not adduced any evidence that would support such an

allegation.

## BACKGROUND

**A.    Procedural History**

This civil action has a long history.  It was opened on December 27, 2017, when a Sealed

Qui Tam Complaint was filed by Relators Gregory Lynn and Paulette Hamilton, on behalf of the

United States of America, against Defendant City of Detroit.  The action was filed in federal

court pursuant to the provisions of 31 U.S.C. § 3732(a), the False Claims Act.  The original

complaint included just one count: "Federal False Claims Act 31 U.S.C. §§ 3729(a)(1)(A) and

(a)(2)" (Count I).  This action was originally assigned to the Honorable Nancy G. Edmunds.

On November 12, 2020, the United States filed its " Notice of Election to Decline

Intervention," that states:

> Pursuant to the False Claims Act, 31 U.S.C. § 3730(b)(4)(B), the United
> States of America ("United States") notifies the Court of its decision not to
> intervene in this action.
>
> Although the United States declines to intervene, we respectfully refer the
> Court to 31 U.S.C. §§ 3730(b)(1) and 3730(c)(3), which allow the relators to
> maintain the action in the name of the United States with the added requirement
> that the "action may be dismissed only if the court and the Attorney General give
> written consent to the dismissal and their reasons for consenting." *Id.* Therefore,
> the United States requests that, should either the relators or the defendants
> propose that this action be dismissed, settled, or otherwise discontinued, this
> Court solicit the written consent of the United States before ruling or granting its
> approval.
>
> Furthermore, pursuant to 31 U.S.C. § 3730(c)(3), the United States
> requests that all pleadings filed in this action be served upon the United States.
> The United States also requests that orders issued by the Court be sent to the
> United States' counsel. The United States reserves its right to order any
> deposition transcripts, to intervene in this action, for good cause, at a later date,
> and to seek the dismissal of the relators' action or claim. The United States and
> also requests that the parties serve the United States with all notices of appeal.
>
> Finally, the United States requests that the relators' Complaint, this
> Notice, and the proposed Order filed concurrently herewith be unsealed. The

> United States requests that all other papers on file in this action remain under seal because in discussing the content and extent of the United States' investigation, such papers are provided by law to the Court alone for the sole purpose of evaluating whether the seal and time for making an election to intervene should be extended.

(ECF No. 27).

On that same date, November 12, 2020,  Judge Edmunds issued an Order providing that the "complaint be unsealed and served upon the defendants by the relators." (ECF No. 28).

On February 16, 2021, this case was reassigned from Judge Edmunds to Judge Cleland, as a companion case to Judge Cleland's Case Number 17-13052, another civil action filed against the City of Detroit and other Defendants.  That case was not sealed and was not a qui tam or False Claims Act case.  Rather, it was civil action asserting race discrimination claims. The plaintiffs in that case were Paulette Hamilton and Enjoi Transportation, LLC.  Judge Cleland granted summary judgment in favor of Defendants in that case, as to all claims asserted against the City of Detroit, and it was closed back on June 27, 2019.

The City of Detroit was served in this action after the United States declined to intervene. Plaintiffs have changed counsel several times during the course of this litigation.

On February 25, 2021, the City of Detroit filed a Motion to Dismiss (ECF No. 34).  In an Order issued on May 3, 2021, Judge Cleland denied the City of Detroit's motion, explaining that it was filed on the ground that a qui tam Plaintiff cannot proceed *pro se* on behalf of the government.  Judge Cleland denied the motion because the Relators obtained new counsel – Howard Lederman.  (ECF No. 37).

The City of Detroit then filed an Answer and Affirmative Defenses.  Judge Cleland issued a Scheduling Order on June 2, 2021, with: 1) a discovery deadline of November 12, 2021;

and 2) motions due by December 17, 2021. (ECF No. 43).

In September of 2021, the Relators filed a "Motion To Amend Qui Tam Complaint." (ECF No. 44). In an Opinion a & Order issued on January 18, 2022, Judge Cleland granted that motion in part:

> IT IS ORDERED that Plaintiffs' "Motion to Amend/Correct Qui Tam Complaint" (ECF No. 44) is GRANTED IN PART. Specifically, it is GRANTED except for the factual allegations pertaining to "Failure or Refusal to Investigate Discrimination Complaints." (ECF No. 44-8, PageID.449-54.)

(*Id*. at 15). A "First Amended Qui Tam Complaint" was filed on February 15, 2022. (ECF No. 50).

On May 20, 2022, the Relators filed a "Second Amended Qui Tam Complaint." (ECF No. 63). That complaint, with its exhibits, spans nearly 700 pages. It contains just one count.

On June 30, 2022, the Relators filed a motion seeking leave to file a Third Amended Qui Tam Complaint. (ECF No. 68). Their proposed Third Amended Complaint included five different counts, including claims under several additional sections of the False Claims Act (proposed Count II under 31 U.S.C. § 3729(a)(1)(B), proposed Count III, under § 3729(a)(1)(A) and (B), proposed Count IV, under 31 U.S.C. § 3729(a)(1)(G), proposed Count V, under 31 U.S.C. § 3730(h)). Their proposed Count III included "False Certifications" in the title and the body of that count included new allegations that the City "knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval vis-a-vis false certifications, express and/or implied" and that the City "knowingly made, used, and caused to be made or used, false records and/or statements material to the false or fraudulent claims for federal grants and funding vis-a-vis false certifications, express and/or implied." (ECF No. 68-3 at PageID.2481).

5

Counsel for the Relators again withdrew (this time Howard Lederman) and on July 29, 2022, the Relators filed a motion asking to stay this case for 90 days so that they could find new counsel.  (ECF No.72).  They later filed another motion asking for more time.  (ECF No. 78). Attorney Eric Stempien eventually appeared on behalf of the Relators on November 1, 2022.

On January 9, 2023, the Relators filed another motion seeking to file a proposed Third Amended Complaint that would include six counts, again including claims under several different provisions of the False Claims Act, including 31 U.S.C. § 3729(a)(1)(B).  (*See* ECF No. 81 at PageID.3473).   Their proposed Count III was titled "(False Certifications) Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) and (B)" and included the allegation that the City "knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval vis-a-vis false certifications, express and/or implied."  (*Id*. at PageID.3474).

On May 18, 2023, Judge Cleland *denied* the Relators' motions seeking leave to file a Third Amended Complaint.  Judge Cleland noted that Plaintiffs were proposing "supplementing the current standalone count" in the Second Amended Complaint by adding five new counts to include additional claims under the False Claims Act.  (ECF No. 86 at PageID.3819).  Judge Cleland denied the motion, concluding that the proposed amendments "are the product of undue delay, [and] repeated failure to cure deficiencies by previous amendments" and if allowed would prejudice the City and further delay this protracted case.  (*Id*. at PageID.3821).  He did so on May 18, 2023.  (ECF No. 86).

Two weeks later, this 2017 case was reassigned to the undersigned judge due to Judge Cleland's retirement from the bench.

Thus, the Relator's Second Amended Qui Tam Complaint (ECF No. 63) is the operative

complaint in this case.  It includes just one count: "Federal False Claims Act Violations (31 U.S.C. Secs. 3729(a)(1)(A)."

Plaintiffs allege that the City of Detroit and the Detroit Department of Transportation received United States Department of Transportation, Federal Transportation Agency ("FTA") funds in significant amounts and received such funds in 2015, 2016, 2017, 2018, 2019, and 2020. (Sec. Am. Compl. at ¶¶ 15 & 16).  "Every year, as a prerequisite to obtaining FTA funding, Defendant City must provide the federal government with certain Assurances and Certifications."  (*Id.* at ¶ 17).  In those assurances and certifications, the individual signing it states that the City "will comply" with various laws, regulations, and requirements.  (*See, eg.* Sec. Am. Compl. at ¶¶ 19, 21, 22, 23)

Plaintiffs allege that the "Defendant City knowingly presented or knowingly caused to be presented false or fraudulent certifications, and thus false claims, to the United States Government for obtaining FTA and other federal funding."  (Sec. Am. Compl. at ¶ 250). Plaintiffs allege that "Defendant City's assurances, statements, and certifications were knowing and at least reckless."  (*Id.* at ¶ 253).

Discovery has closed and there are cross-motions for summary judgment pending before this Court.  The Government was ordered to respond to these motions and it filed a brief stating that it takes no position as to the merits of the motions.

**B.     Standard of Decision**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving

party's case on which the nonmoving party would bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is "material" for the purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties.  *Kendall v. Hoover, Co.* 751 F.2d 171, 174 (6th Cir. 1984).  A dispute over a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Here, the Court is presented with cross-motions for summary judgment.  That both parties in this case have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts.  *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (citations omitted). Thus, in reviewing these motions, this Court "must be careful to 'evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Langston v. Charter Twp. of Redford*, 623 F. App'x 749, 754-55 (6th Cir. 2015) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

**C.    Relevant Evidence Submitted By The Parties**

Unless noted otherwise, the following relevant[1] facts are undisputed.

The City of Detroit ("the City") is a Michigan municipal corporation, located in Wayne County, Michigan.   Among other departments and divisions, the City operates a Department of Transportation ("DDOT").

As a grantee of the Federal Transit Authority ("FTA") federal funds, the City and its DDOT are responsible for managing the City's programs and for complying with federal statutory and administrative requirements.

To receive federal funds from the FTA, the City signed Certifications and Assurances for each of the relevant fiscal years.

Plaintiffs have identified the Certifications and Assurances that are at issue in this case as follows:

• Fiscal Year 2015 signed and affirmed by Defendant Director of Transportation Dan Dirks on December 22, 2014 and signed and affirmed by Defendant counsel Melvin Hollowell on January 9, 2015;

• Fiscal Year 2016 signed and affirmed by Defendant Director of Transportation Dan Dirks on May 11, 2016 and signed and affirmed by Defendant counsel Melvin Hollowell on May 26, 2016;

• Fiscal Year 2017 signed and affirmed by Defendant Director of Transportation Dan Dirks on April 7, 2017 and signed and affirmed by Defendant counsel Melvin Hollowell on April 5, 2017;

• Fiscal Year 2018 signed and affirmed by Defendant Director of Transportation Dan Dirks on May 10, 2018 and signed and affirmed by Defendant counsel Lawrence Garcia on May 10, 2018;

• Fiscal Year 2019 signed and affirmed by Defendant Interim Director of

---

[1]The parties initially provided extensive statements of fact, and supporting evidence, regarding various factual allegations that are not relevant to the narrow claims that are actually asserted in the operative complaint.

9

Transportation Angelica Jones on March 14, 2019 and signed and
affirmed by Defendant counsel Lawrence Garcia on March 15, 2019;

• Fiscal Year 2020 signed and affirmed by Defendant Director of
Transportation Mikel Oglesby on November 18, 2020 and signed and
affirmed by Defendant counsel Lawrence Garcia on November 18,
2020;

• Fiscal Year 2021 signed and affirmed by Defendant Director of
Transportation Mikel Oglesby on February 23, 2021 and signed and
affirmed by Defendant counsel Lawrence Garcia on February 24, 2021;

• Fiscal Year 2022 signed and affirmed by Defendant Director of
Transportation Mikel Oglesby on March 21, 2022 and signed and
affirmed by Defendant counsel Charles Raimi on March 22, 2022.

(Pls.' Br., ECF No. 118, at 8).

Plaintiffs produced copies of those annual Certifications and Assurances. (ECF No. 118-
2). In each of these Certifications and Assurances, an individual representing the City certifies
that the Applicant (the City) "agrees *to comply* with all Federal statutes and regulations,"with
respect to the federal fiscal year at issue. (ECF No. 1182 at PageID.6358) (emphasis added).

The Relators, Gregory Lynn and Paulette Hamilton, are the principals of Enjoi
Transportation, LLC ("Enjoi"), an entity that previously provided paratransit services to the City,
either directly or as a subcontractor to other companies, including Transdev Services, Inc.
("Transdev").

Many of the factual allegations in the Second Amended Complaint relate to a contract
that  the City awarded in 2016 to Transdev, to provide "paratransit services," which are public
transportation services to resident who cannot use regular city public bus services due to a
physical or mental disability. The City selected Transdev for the paratransit contract, which
subcontracted with Enjoi and three other local companies to provide vehicles and drivers for the

program.

On or about March 20, 2017, however, Transdev terminated its subcontract with the Relator's company, Enjoi.   Following that termination, the Relators (Lynn and Hamilton) and their company (Enjoi) took several actions.

First, Enjoi and Hamilton filed a 19-count federal lawsuit against Transdev, the City, and others, centered on alleged racial discrimination. *See Enjoi Transportation, LLC v City of Detroit*, 2019 WL 764237 (ED Mich 2019).   That case was assigned to Judge Robert Cleland, who ultimately dismissed all of Plaintiffs's claims.   *Id.*   Lynn, Hamilton, and/or Enjoi also filed numerous ethical complaints with various governmental agencies.

On December 27, 2017, Lynn and Hamilton, as Relators, filed this qui tam lawsuit against the City under the False Claims Act.

## ANALYSIS

Again, the Relator's Second Amended Qui Tam Complaint (ECF No. 63) is the operative complaint in this case.   It includes just one count: "Federal False Claims Act Violations (31 U.S.C. Secs. 3729(a)(1)(A)."

As the third judge assigned to this 2017 case – and faced with summary judgment motions after not having presided over this case during the past seven years –  this Court's first order of business was ascertaining what claims are actually in this case.   That task was complicated by the fact that Plaintiffs have been represented by three different law firms during the course of this case and have sought numerous amendments of their complaint.

"The False Claims Act, 31 U.S.C. § 3729 *et seq*., imposes civil liability that is 'essentially punitive in nature' on those who defraud the U.S. government."   *United States ex rel.*

*Prather v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 830 (6th Cir. 2018) (quoting

*Universal Health Svs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 136 S.Ct. 1989, 195

L.Ed.2d 348 (2016).  The Act makes liable "any person who ... knowingly presents, or causes to

be presented, a false or fraudulent claim for payment or approval" to the government. 31 U.S.C.

§ 3729(a)(1)(A).

Because the statute itself contains no definition of "false" or "falsity," federal courts have

developed two basic types of claims that are actionable under the FCA: 1) factually false claims;

and 2) legally false claims.  *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543

F.3d 1211, 1217 (10th Cir. 2008).

Factually false claims are easily understood and demonstrated, as they involve claims

where a person misrepresents what goods and services were provided to the government.

Legally false claims are of a different character and they arise when a person certifies

compliance with a statute or regulation that is a condition of government payment while

knowing that no such compliance exits.  *Id*.  Legally false certification claims under the FCA can

rest on one of two different theories: 1) express false certification; and 2) implied false

certification.  *Id*.; *see also United States ex rel. Polukoff v. St. Mark's Hospital*, 895 F.3d 730,

741 (10th Cir. 2018;

*U.S. ex rel. Hobbs v. MedQuest Assocs., Inc.,* 711 F.3d 707, 714 (6th Cir. 2013).

"In an express false certification, the defendant is alleged to have signed or otherwise

certified to compliance with some law or regulation on the face of the claim submitted."

*MedQuest Assocs., Inc., supra*; *see also Conner*, 543 F.3d at 1217 ("An express false

certification theory applies when a government payee falsely certifies compliance with a

12

particular statute, regulation or contractual terms, where compliance is a prerequisite to

payment.").

The district court in *U.S. v. Kellog Brown & Root Svs., Inc*., explained the difference

between express false certification and implied false certification with this example:

> An express false certification occurs when a claimant explicitly represents that he
> or she has complied with a contractual condition, but in fact has not complied.
> *Mikes,* 274 F.3d at 698. For example, a law student who submits an essay signed,
> "This is my own work," would be guilty of an express false certification if the
> essay had actually been lifted from an online source. By contrast, an implied false
> certification occurs when the claimant makes no affirmative representation but
> fails to comply with a contractual or regulatory provision "where certification was
> a prerequisite to the government action sought." *SAIC II,* 626 F.3d at 1266
> (quoting *United States ex rel. Siewick Jamieson Sci. & Eng'g, Inc*., 214 F.3d
> 1372, 1376 (D.C.Cir. 2000)). To return to our misguided law student, he would
> commit an implied false certification by turning in a plagiarized essay—even
> without testifying to its authenticity—if a law school guideline requiring that "All
> submissions must be your own work," was a prerequisite for submitting work in
> the course.

*U.S. v. Kellog Brown & Root Svs., Inc*., 800 F.Supp.2d 143, 154-66 (2011).

Claims asserted under the implied false certification theory are more nebulous and some

courts rejected claims based upon such a theory.

In *Escobar*, however, the Supreme Court held that "the implied false certification theory

can, *at least in some circumstances*, provide a basis for liability." *Escobar*, 579 U.S. at186-87

(emphasis added).  The Supreme Court held that "the implied certification theory can be a basis

for liability, at least where two conditions are satisfied: first, the claim does not merely request

payment, but also makes specific representations about the goods or services provided; and

second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or

contractual requirements makes those representations misleading half-truths." *Id*. at 190.  In

*Escobar*, the Supreme Court also addressed the "rigorous" materiality and scienter requirements

that apply to claims under an implied certification theory.  *Id.* at 192.

Plaintiffs' pending motion (and their related briefs) reflect that Plaintiffs believe that their operative complaint asserts several different kinds of FCA claims – and at least two counts. Plaintiffs' brief opens by asserting that their SAC alleges "violation of 31 U.S.C. § 3729(a)(1)(A) of the False Claims Act (False or Fraudulent Claims) *and violations of 31 U.S.C. § 3729(a)(1)(B) of the False Claims Act*."  (Pls.' Br., ECF No. 95 at PageID.4667) (italics added for emphasis).    Later in their brief, Plaintiffs assert that they have two different Counts in their operative complaint:

> A "claim" for purposes of the FCA includes both "direct requests to the Government for payment as well as reimbursement requests made to the recipients
> of federal funds under federal benefits programs." *Universal Health Servs. Inc. v. Escobar*, 136 S. Ct. 1989, 1996 (2016) (citing § 3729(b)(2)(A)) (emphasis added)
> Count I of Relators' Complaint involves the former type of "claim" alleging the Defendant directly presented false claims for payment to the Government vis-à- vis the Defendant's submission of Checker Cab, Comfort & Care Transportation, Wrightway Transportation, and Transdev's invoices into the FTA's Transit Award Management System ("TrAMS") in reckless disregard of the falsity of the information contained in the submitted claims. Count II, on the other hand, involves the latter type of "claim", by alleging Defendant knowingly presented, or caused to presented, false or fraudulent claims for payment or approval by way of false certifications, express and/or implied.

(ECF No. 95 at PageID.4687).  On page 25 of Plaintiffs' summary judgment brief, Plaintiffs represent to the Court that, under "Count II" of their complaint, "Relators proceed under what has been coined the 'false certification' theory of liability."  (ECF No. 95 at PageID.4690).

As the City expressly notes in its response brief, the operative complaint in this action *only contains one count* asserting claims under one specific section of the FCA:

> [T]he City denies that Plaintiffs; Second Amended Complaint contains two counts because this is untrue.  Both the original complaint and Plaintiffs' amended complaint only contained one count. The original complaint contained one count,

entitled "Federal False Claim Act, 31 U.S.C. §§3729(a)(1)(A) and (a)(2)." The most recent amended complaint also contains only one count, but the title removes the reference to 31 U.S.C. §3729(a)(2). Count I of Plaintiffs' Second Amended Complaint is entitled "Federal False Claim Act, 31 U.S.C. §3729(a)(1)(A).

(Def.'s Br., ECF No. 99 at PageID.4914).[2]

The City is correct.    Plaintiffs' original Complaint included just one count, titled:

"Federal False Claims Act 31 U.S.C. §§ 3729(a)(1)(A) *and (a)(2)*.  (ECF No. 1 at PageID.13)

(emphasis added)

Plaintiffs' Second Amended Complaint (which is the operative complaint) also includes

just one count but Plaintiffs chose to *delete* any claims being made under 31 U.S.C. § 3729(a)(2).

(*See* ECF No. 63 at PageID.1673)(with Count I titled "Federal False Claims Act Violations (31

U.S.C. Secs. 3729(a)(1)(A)").  Moreover, the body of Count I makes no reference to 31 U.S.C. §

3729(a)(2), a specific section of the FCA that was in their prior complaint.

It is well established that the filing of an amended complaint replaces and supercedes a

prior complaint.  *In re Refrigerant Compressors Antitrust Litig*., 731 F.3d 586, 589 (6th Cir.

2013).  Thus, Plaintiff dropped any claims under 31 U.S.C. § 3729(a)(2).

And while both of Plaintiffs' proposed Third Amended Complaints sought to add a count

that asserted claims under 31 U.S.C. § 3729(a)(1)(B), and sought to add a count asserting claims

under an implied false certification theory, Judge Cleland *denied their motions seeking to file a*

*third amended complaint in this action.*

As such, this Court concludes that there is no claim under 31 U.S.C. § 3729(a)(1)(B), and

---

[2]Nevertheless, out of an abundance of caution, the City's motion analyzes additional claims not included in the operative complaint and explains why they fail for numerous reasons.

no claim under 31 U.S.C. § 3729(a)(2), in this case.   And Plaintiffs' Second Amended

Complaint *does not include claims under an implied false certification theory.*  Plaintiffs'

pending motion for summary judgment, however, addressed such claims.[3]

Given these circumstances, in an Order issued on July 29, 2024, this Court ordered "the

parties to file supplemental briefs that focus on the limited claims set forth in the operative

Second Amended Complaint."  (ECF No. 111).

Thereafter, the parties filed those supplemental briefs.[4]  Plaintiffs' opening supplemental

brief largely regurgitated its prior arguments and failed to focus on the narrow claims in this

case.  The City's opening supplemental brief, however, addressed the narrow claims at issue here

and provided a cogent analysis of those issues, along with a discussion of various cases that

support the City's position.  Despite the City having done so, Plaintiffs' failed to address the

relevant case law in their responsive supplemental brief.

This Court must now consider the pending cross-motions and decide whether Plaintiffs'

express false certification claims should proceed to a jury trial.

The City argues that Plaintiffs' false certification claims asserted against the City fail for

several reasons and the Court should therefore enter summary judgment in its favor and dismiss

this case.  The Court agrees.

I.     **The City Of Detroit Is Entitled To Summary Judgment In Its Favor As To Plaintiffs' Express False Certification Claims, That Are Based On The City's**

---

[3]To the extent that Plaintiffs seek summary judgment rulings regarding such claims, those requests are denied because there are no such claims in this case.

[4]Plaintiffs also filed a motion seeking leave to file a Fourth Amended Complaint in this action.  (ECF No. 114).  This Court denied that motion in an Opinion and Order issued on August 15, 2024.  (ECF No. 117).

**Annual "Certifications And Assurances."**

Plaintiffs contend that they can establish an express false certification claim against the City based on the City's "annual certifications and assurances."  (Pls.' Br., ECF No. 118, at 6). The City seeks summary judgment in its favor at to these claims.

The City first asserts that "Plaintiffs cannot establish an express false certification claim based on City officials' certifications and assurances, because these related to future compliance with federal laws and regulations, not past of present compliance."  (Def.'s Br., ECF No. 113, at 14).  This argument is based upon the well-established rule that, to support a fraud claim, the misrepresentation at issue must be related to a past or existing fact, because future promises are contractual and do not constitute fraud.  *See, eg., Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336 (1976).

As such, courts addressing "false certification" claims under the FCA have held that representations about *future performance*, such as annual assurances of compliance, are insufficient to establish a claim.  *See, eg., United States ex rel. Kennedy v. Aventis Pharmaceuticals, Inc.,* 610 F.Supp.2d 938, 945-46 (N.D. Ill. 2009).  In that case, the plaintiff relators asserted a FCA claim based upon annual certifications that a hospital receiving Medicare reimbursement makes, stating that the entity "will abide by" applicable laws and regulations.  *Id.* at 945-46.  The district court dismissed those claims, explaining:

> Had relators alleged that one or more of the hospitals falsely certified, in connection with a Medicare claim, that it had complied with the anti-kickback statute, that might be sufficient to state a claim under 3729(a) . . .  But relators have identified no express false certification or compliance with the anti-kickback statute.  Rather, they allege only that the hospitals promised they would comply with the statute and affirmed their understanding that if they did not do so, they would be ineligible for Medicare participation.  This is a forward-looking statement – not a promise or undertaking – not a false representation.

17

*Id.* at 946.

Here too, the Plaintiff Relators seek to assert an express false certification claim against the City based on the City's annual certifications and assurances that it "will comply" or "agrees to comply with" federal statutes and regulations.  (Sec. Am. Compl. at ¶¶ 19, 22, 23, 24; ECF No. 118-2).  Thus, like the situation presented in the above case, this claim is based upon a future promise, not a past or existing fact, and the claim therefore fails.

And while the Plaintiff Relators have not raised or discussed it, some courts have allowed a false express certification to proceed under a "promissory fraud" exception – so long as the plaintiff can establish that the defendant had no intention of complying in the future at the time the certification was made.  *See, U.S. ex rel. Lamers v. City of Green Bay*, 998 F.Supp. 971, 986-87 (E.D. Wisc. 1998) (Stating that "so-called 'promissory fraud'" may be a legitimate claim under the FCA, although such a claim is "difficult to sustain" and requires the plaintiff to prove that the party making the assurance had no intention of complying with the requirements at the time the assurance was made.).

Notably, the Plaintiff Relators have not sought to avail themselves of this exception. Moreover, the City has shown that the exception cannot apply here for several reasons.

First, Plaintiffs have not identified any case wherein the Sixth Circuit has endorsed this exception.  And the case law appears to reflect that it has not done so.  *See United States ex rel. Griffith v. Conn*, 117 F.Supp.3d 961, 977 (E.D. Ky. 2015) (wherein then district court, now Sixth Circuit, Judge Amul Thapar noted that "the Sixth Circuit has not yet weighed in on the viability of the promissory fraud theory in the FCA context," and explaining that even those who have endorsed it "have recognized significant limits" on it and that it only applies in "rare

circumstances under the FCA.").

Second, Plaintiffs have not alleged this limited exception in their Second Amended Complaint. The FCA "is an anti-fraud statute and claims under it area subject to the heightened pleading requirements of Rule 9(b)." *United States ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740-41 (7th Cir. 2007). This means the operative complaint must allege "the who, what, when, where and how" of the alleged fraud. *Id*. As a result, even where the promissory fraud theory is recognized, courts dismiss express false certification claims where the relators have not sufficiently alleged it in their complaint. *See, eg., United States ex rel. Westmoreland v. Amgen, Inc.,* 707 F.Supp.2d 123, 134 & 136 (D. Mass. 2010) (Stating the court "see no reason why an express certification of compliance with a particular statute cannot be prospective, as long as it is knowingly false when made," and explaining that "the problem here" is "that the Plaintiffs have not alleged that providers expressly made such statements knowing their falsity. The Plaintiffs do not allege that when the providers signed the enrollment forms, they knew that they would be accepting kickbacks from the Defendants in violation of the anti-kickback statute. Without such pleading, there can be no 'false claim.'"); *United States ex rel. Blundell v. Dialysis Clinic, Inc.*, 2011 WL 167246 at *14-15 (N.D. N.Y. 2011) (dismissing false certification claim, that relied on promissory fraud exception, where the plaintiffs "failed to allege that defendants knew, when they signed the form, that they would be accepting payment in violation of the anti-kick back statute."

Like the operative complaints in those case, Plaintiffs' Second Amended Complaint in this case lacks sufficient allegations to establish the promissory fraud theory of express certification. That is, it does not allege the who, what, when, and how in relation to the

promissory fraud theory.  The Second Amended Complaint does not allege that the various individuals who signed the certifications and assurances at issue had no intention to comply with the federal laws and regulations at the time they signed them.  Accordingly, even if the Sixth Circuit were to recognize the promissory fraud theory of express certification, this claim would still fail.

Third, even if the Sixth Circuit were to recognize the exception, and Plaintiffs had sufficiently alleged it in the operative complaint, Plaintiffs have not provided the Court with *evidence* to show that the individuals who signed the certifications at issue had no intention of complying with federal laws and regulations at the time that they signed them.  As various courts have explained, where this exception is recognized, the plaintiff must adduce evidence that the individuals making the statements had no intention of complying at the time the statement was made.  *See, eg., United States ex rel. Parato v. Unadilla Health Care Ctr., Inc*., 787 F.Supp.22 1329, 1340 (M.D. Ga.  2011) (The plaintiff "must come forward with sufficient evidence to show" that the defendant's assurances and certifications "were known to be false at the time they were made," and granting summary judgment to defendant because the plaintiff failed to adduce such evidence.); *United States ex rel. Ziebell v. Fox Valley Workforce Dev. Bd., Inc*., 806 F.3d 946, 951 (7th Cir. 2015) (granting summary judgment in favor of defendant on false certification on same ground, lack of evidence of fraudulent intent).

The City goes even further, and has offered evidence that those individuals who signed the certification expected and intended that the City would comply with applicable laws and regulations at the time they signed them.  (*See* ECF Nos. 94-9, 94-10, 94-12).

Accordingly, for all of these reasons, the Court concludes that Plaintiffs' express false

certification claims fail, that the City is entitled to summary judgment in its favor, and this action must be dismissed.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Plaintiffs' summary judgment motion is DENIED.

IT IS FURTHER ORDERED that Defendant's summary judgment motion is GRANTED and this action is DISMISSED.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  September 27, 2024